On behalf of the Avalanche, Mr. Harper, Mr. White, on behalf of the people of the state of Illinois, Mr. James. Mr. White, have you had the opportunity to read People v. Rhodes? Yes.  Not surprisingly, I don't think it applies here. Why is that? Because Rhodes' concerns... This court has already shown a history of recognizing improper admonishments as being a violation of substantial compliance 402. Davis seems to have focused its analysis on... I think it even regarded as critical in its determinations, its analysis focusing on the admonishments rather than necessarily what the defendant believed he was going to get, although I suppose they're interrelated, but it was really the admonishments. This court has demonstrated in People v. Ellis, has demonstrated that substantial compliance would not exist if there's a case where the defendant is not given the proper minimum and maximum sentences, and Rhodes specifically relies on its progeny of cases from the other districts, which, in fact, I believe explicitly says that it could still be substantial compliance. So I think this court has a history of being more protectionist of the defendant's sentence. But in this case, the trial court admonished him and took into consideration everything in the pre-sentence investigation and then made a determination that he felt he was not an adequate candidate for task, correct? Correct. So where was the prejudice to the defendant? Well, the prejudice was that, in fact, the defendant wasn't eligible for task, and had the defendant known that and had the defendant been told that he wasn't task eligible, he may have decided to stay in trial. He may have decided to enter into a different agreement. In fact, I think similarly is if they later found out that task had been imposed and had been imposed improperly because the court was under the misimpression that it was entitled to give task, that sentence would most likely be void, in which case there's certainly prejudice. So I think here just the fact that the defendant was under the impression that he could receive task really changed the dynamic and the paradigm of what he was dealing with in entering his negotiation. Nobody promised him task, however. They didn't promise him task, although there does seem to be a longstanding thing that a defendant should be allowed to withdraw a guilty plea due to misapprehension of facts or law by a prosecutor, defense counsel, or someone else in authority. And in this case, it's really everyone else in authority. No one caught the fact that he is not eligible for task, not the defense counsel, not the trial judge, and not the state's attorney. In fact, the defendant was under, you can't say the defendant was necessarily under the belief he would get task necessarily, but he certainly had every reason to think that that was a possibility. He had a letter from task accepting him. He had a letter from just saying that he would have been an appropriate candidate. So even though it wasn't promised, it certainly was something that he considered himself to be eligible for and had not heard anything any different. Now, this case is different than Davis, though, isn't it, where the defendant pled guilty but prior to sentencing found out that he was not eligible for task? Yes. And so we don't have the same situation here. I mean, he was clearly there prejudiced by the misapprehension that at sentencing he, when he pled guilty, was under the misapprehension that he would have had the option of task and not just imprisonment. So there the prejudice was pretty clear. Here the facts are really not the same. And so I obviously heard what you argued previously as to where you think the prejudice is, but it can be looked at a little differently, right, that there was no prejudice because it was different than Davis and the trial court actually did consider task. Well, the trial court here... He wasn't under the same misapprehension either at the time he pled or even at sent. Right, not the same misapprehension. He was certainly under a misapprehension at the time. He didn't know that he wasn't eligible at the time. It may well be, for all we know, the court never had any intention of giving him task from day one, even though that is certainly presented to him as an obligation. But here the admonishments didn't include task, rather the admonishments did include task, when in fact that's a lower minimum sentence than he actually could have gotten. There's no way he legally could have gotten task and had that remain a valid sentence. Well, it's not like he had a mandatory prison sentence, right? No. But, right, but task... And so what did he get? He ended up getting a prison sentence of six years and six months. Correct, so he didn't get task, but he didn't get probation either, both of which he was advised that he was eligible for. Maybe one improperly advised, but the other one not improperly advised. So my question is where's the prejudice? Well, task he certainly had more of a reason to believe. Not only was he not told by the judge that he could not get it, but he was under the impression not only from defense counsel, which I know necessarily isn't enough, but he had acceptance of task. He had letters from just. He had certainly a subjective belief, probably an objective belief, that that was at least on the table even if it wasn't. That was after he had pled. So he didn't have those subjective beliefs prior to his pleading. He may have had the belief prior to his pleading he was eligible for task. He didn't know prior to pleading that all of these letters were going to be coming in his favor, did he? Right, he knew it right. At the time he pled, though, he entered the plea. Thinking he was eligible for task. Thinking he was eligible for task and not being told any differently by the trial court, who had a 402 duty to explain the minimum and maximum sentences that he was eligible for. Why should that make any difference? I mean, the trial court considered the merits of task and didn't grant it. So what difference does it make? Well, because it's still a minimum sentence that he. The trial court admonished him regarding improper minimum sentence, and had he known that he wasn't eligible, objectively wasn't eligible, he could have not entered a plea. He could have decided to stay in trial. He could have done any number of things. If the trial court had considered that improperly and had granted him task, which it didn't do, obviously, but I think we'd have a similar situation where that would be a void sentence and it would go back, even though everyone considered it as if it were valid. Well, we don't know whether or not he would have pled or not pled were he eligible for task, not eligible for task. Right, and I think that's where the prejudice lies is we just don't know. We don't know what he would have done, and he certainly had an opportunity then, or would have had an opportunity to do something differently. So how is this different than Rhodes? Because Rhodes, I think, was a similar situation, but it didn't focus to the extent that Davis did on the admonitions given by the trial court. And here I think there's a history within this district, certainly as demonstrated by Ellis, that a court's failure to properly admonish a defendant concerning the minimum and the maximum penalties can be substantial compliance and reversible under 402. And I don't think Rhodes has the same grounding in the admonitions that this district has. So I think in this district the case is different, even if factually similar, is different legally than Rhodes and is more consistent with Davis and with Ellis. So you kind of beat around the bush when you said had he been granted task it would have been a void sentence. Did you not say something like that? Could have been, sure. What do you mean could have been? If he's not eligible for task and the court granted it, are you telling me that there's some way that task could have been enforced against the state had he filed an appeal? No, no, no. What I meant could have been is I'm certainly not the court, so I don't know what they would have come up with, but I think it's certainly reasonable to believe that that would have been a void sentence, yes. What is the definition of a knowing voluntary plea? I think one that's pretty much self-defined is knowing voluntary. You have to be aware of the consequences of what is being entered into, and specifically said in prior cases that the minimum and the maximum are certainly things that need to be known by a defendant before he can enter a knowing and intelligent plea. Well, are you supposed to know the things that the statute allows the trial court to do and the things the statutes don't allow the trial court to do? Sure. I mean, there are certain things that he doesn't need to know, collateral situations, things like that, but this specifically deals with the amount of time, whether or not he gets a prison sentence, whether or not he gets tasked. These are fundamental aspects of his sentence. I think these are certainly going to go into whether or not that plea was knowing. If he was told something that he could have gotten a lower sentence and, in fact, did not get a lower sentence, not necessarily even because he wasn't eligible for that lower sentence, but just did not get that lower sentence, I think that certainly affects it. Would you buy a lottery ticket if the odds were 1 in 250 million? Apparently people do it. Apparently they do. Would you buy a lottery ticket if there was a sign on the door that said that you, in particular, the only person who had bought a ticket had a statute passed against him and said that you could not win even if your number was picked? Would you buy a lottery ticket under those circumstances? Would I? No. Why wouldn't you? Certainly some may. Why wouldn't you? Why wouldn't you buy a ticket if it was a foregone conclusion and you knew it was a foregone conclusion? Well, let's look at it a slightly different way. Let's say that you didn't see the sign until you came. You know, the sign was there. Maybe it wasn't. Who knows? Maybe the sign was put up on the glass door of the 7-Eleven that you bought the ticket at. You find out that you won the lottery. You supposedly are going to go collect your $250 million, and then you find out that, unfortunately, you're not allowed to collect on your ticket. Do you think, knowing that then, do you think you would have bought a ticket the first time around? Does the person buying the ticket have the obligation to put the sign up on the door? I mean, here we're imposing, it seems, upon the defendant the obligation that the court holds to give the proper signage. Let's put it another way. Would you be any more apt to buy a ticket knowing ahead of time or after the fact that you're not going to win no matter how many tickets you buy? If you had hindsight, would your opinion be the same as if you had foresight and knew that you weren't going to win? Well, everyone's going to say no to that question, of course. Why would they say no? If you knew after the fact that you weren't going to win, wouldn't you not have said, had I known that I was not going to win the lottery, or if I actually got the number correct, I wouldn't collect, I would not have bought the tickets. Sure, that's what they'd say. Is that reasonable? Or is that unreasonable? Well, there you're dealing with a situation where a law is passed for a specific person. There's no reason for that specific person to think that it has been any law passed saying that person couldn't collect. Here, there is task. Task is offered to people every day. Task is offered to people to such an extent, in fact, that no one here knew task wasn't available, and the court didn't make the sign big enough. In fact, the court didn't put the sign out there at all for the defendant to know that he, in fact, wasn't actually eligible for task because, in fact, it turned out the court didn't know that. But they at least held the lottery, and they didn't pick his number, so didn't he, quote-unquote, get the benefit of the bargain? Well, maybe, no, because they didn't pick the number, but had he known at the time, and it was the obligation of the court to tell him at the time that he couldn't have won that lottery, then he probably wouldn't have bought a ticket at that time, and that's, I think, more of the situation we have here, is the fact that he couldn't have gotten task, whether the court considered task or not, really isn't terribly relevant. It's the minimum sentence that he was told or promised he actually couldn't have gotten. If his lawyer hadn't... What if there was $500 million instead of $250 million? Would that change anything? He would buy two tickets, but no, probably not. That's the point. But he was admonished, and he pled to... He was admonished exactly as everyone had thought he should have been admonished. Yes. Unlike Davis, or was it Ellis, where he was admonished, I think it's Ellis, where he was admonished, and then right before sentencing said, oh, by the by, you're not eligible for task, and then the court proceeds to sentencing. And this case is a little different in that everyone was on the same page, including him, correct? Right. So when he pled guilty, he knew that he had the possibility of not being eligible for task. Right, but he didn't know he had the certainty of not being able to get task, because had this judge actually imposed task, as we said earlier, it would have been void. So task really was never on the table, even though he believed it was, and everyone believed it was, which I think is what makes it more problematic here, because it's really a question of noncompliance with the 402 rules. He wasn't told the minimum possible sentence here that he could have gotten. Even though everyone believed that that minimum sentence did include task, it in fact didn't. And so he couldn't enter. He couldn't really enter into that bargain. And had he known you cannot get task in this situation, we don't know what he would have done. He may have said, well, I'm going to stay in trial, or maybe I can work for a lower sentence, or maybe he even ends up with a higher sentence. Who knows? But he wouldn't have ended up in this situation. That we know for sure. And for that reason, we ask that the court reverse the circuit court's order denying his motion to withdraw his plea and remand the cause to afford him the opportunity to plea anew. Let me ask you one final question. I mean, the facts of this case are pretty dead bang guilty, aren't they? Does that make any difference? I mean, he was caught red-handed with some watches from Macy's. So was he – what is the possibility, or is there a possibility that he would have pled not guilty and gone to trial? I mean, do we take that into consideration, or do we not? I don't think so, because we don't know. It may be that witnesses don't testify. There's any number of times that someone appears to be very guilty prior to trial, and then at trial different facts come out. Or he wouldn't, in the situation you said, he wouldn't be able to have the opportunity to defend himself. So it's really hard to tell whether or not he would have even foreclosed the opportunity to trial. But even if he did foreclose the opportunity to trial and said, I'm not going to stand trial again because these are bad facts, maybe he could have negotiated something differently. Yes. Thank you. Thank you. Mr. Jacobs. Good morning. Please support the counsel. Even Davis, the Supreme Court case that's cited by both counsel, doesn't say that all improper or all inadequate admonishments require reversal or withdrawal of a guilty plea. There still has to be the showing of prejudice, and many of the questions have focused on prejudice. In this case, there simply hasn't been any showing that the defendant was prejudiced by this admonishment. It's arguable whether or not the admonishment was even improper, or strike that, whether his misapprehension was reasonable or not. This is a career criminal who had 12 retail theft convictions prior to this time. He had incentives of task probation in 2002, which he didn't complete successfully. If anyone knew during the plea negotiations whether or not he might get a task, he had a pretty good idea, I believe. What exactly is a plea of guilty? Is it not a waiver of a constitutional right? It is. It's a waiver of a constitutional right to trial. It's a waiver of a constitutional right, and it's based upon false information, should one then, based upon the fact that there might have been some meritorious consideration, but it was based upon a false premise, and it really was unknowingly made because the information that was available was incredibly wrong. Is the constitutional right to a jury trial now by the boards on the basis that he has any prejudice because the trial court, in its serendipitous or its adjudicatory mode, decided that task wasn't available when, in fact, task was never available? I'm not certain I understand the whole question, although I will repeat the data. It's not just whether or not he was given the opportunity to have a judge decide yes or no versus task or no task because the judge really never had the authority to do that. So essentially that's a melody. What the judge was required under the law was to deny him task, but he pled thinking that he was at least eligible for task. He was hoping for task. Yes. And for probation as well. And if you're of the belief, if that's what your knowledge is, if that is what your knowing is and it's wrong, and you've waived your right to a jury trial or you waived your right to plead to a different sentence or plea agreement or 402 conference or whatever it is, how is it that you're not prejudiced when supposedly your plea is totally bass-ackwards, totally in the dark, totally wrong, totally based upon the false premise that the judge can do something that he can't? I guess the simplest way to look at it is whether or not this defendant could have received a better sentence. Could he have received task had he gone to trial? The answer is clearly no. Could he have received task had he negotiated with the state? In this case, the state was unwilling to negotiate. My understanding of prejudice is whether or not, based upon the totality of the facts and circumstances, would the defendant enter the plea that he did, not what was the downstream effects, what are the fortuitous circumstances, does he win the lottery and maybe only get 10% versus 50% or 100% because there's a law passed against him. It's not what happens to him insofar as the level and degree, the nature and extent, of whatever punishment that might be imposed upon him. It's whether or not he's prejudiced if supposedly he would not have entered the plea had he known what the true facts were. That's what I believe in this case. I respectfully disagree that there's any evidence to the record that he did not, that he had an expectation that he would receive task. He hoped, as your first analogy during counsel's recitation indicated, it was a gamble. He had hoped. He pled for leniency. He asked for task. He asked for probation. It wasn't a gamble, though. The trial court couldn't have granted it. Hope and eligibility are two different things, counsel. I think that's what justice is trying to say. They are two different things. I apologize for that. The trial court also did not grant probation, which he technically was eligible for. The trial court made this independent decision. I believe there has to be a showing that he relied upon something the trial court said. And in this case, the trial court properly admonished him of, that he was two to five year eligible and extended term eligible based upon his criminal history. This is not Davis where there was a bait and switch where he pled guilty under the belief that he was potentially going to receive task. And then prior to sentencing told, oh, we've determined you can't have task and you can't withdraw your guilty plea. So you're telling me that the basis for finding prejudice is not whether or not he never would have gotten it under any circumstance. It's the basis for the ruling of the trial court. Because if in Davis he's quote, unquote, had not said what he did and quote, unquote, had done what had happened in this case, you're telling me that Davis would have been different. Davis, I thought the holding in Davis said that the prejudice was that the probability would have been that he would not have quote, unquote, entered into the plea. Had he known what he was told in the 11th hour? Had he been told that previously before he entered his plea, they basically said, well, he's been prejudiced because he had been told early on instead of later on. He probably would have changed his plea or would have drawn it. And that, according to Davis, was the prejudice. Now, the error was committed because quote, unquote, he was told later on. And the record is fairly clear that the trial court actually did what the statute provided. But the issue isn't whether or not the statute provides for whether or not the defendant knew or didn't know. It's whether or not he actually did know that what he was supposedly agreeing to was practically possible or probable. Not virtually or, and I say virtually impossible, because judges sometimes do grant tasks when it isn't available. And that possibly could have happened here. You know, counsel's argument that this would have been a void sentence, I guess, is questionable. Who would raise the void sentence if TASC, at the date of sentencing even, had submitted a letter saying they were willing to accept this gentleman into the program? So the worry that it would be a void sentence, yes, technically it would be a void sentence. But whoever would raise that one and adhere to the benefit of the defendant? Your comment indicates Rhodes is not applicable here. Rhodes is directly on point. It focuses more upon, obviously, the prejudice prong. I believe there are two actual prongs, whether or not the misapprehension was reasonable or not. And I think in Davis, the reversal was granted because the court found that both the admonishment was completely improper, the defendant wasn't eligible for TASC, and there was no showing in the record, of course, that he was eligible, and the defendant was denied even the consideration by the court of TASC. That's not this case. That's not Rhodes. He was not given the opportunity to withdraw his plea once he learned his biology. Correct. Correct. Do you know what mutuality is? In what context? Insofar as contracts is concerned. Take me back a few years, though. Because plea agreements are considered to be contracts. In civil law, mutuality is no longer a requirement. But in the criminal law, it apparently still is. As I said, the defendant received the benefit of what he bargained for, and that was consideration by the court. Which means that if that's your position, then would your position also be that had he been granted TASC, and this case had come up on appeal for some error that the appellant claimed, such as lack of credit for a day in jail or a DNA feed that shouldn't be assessed, would the State's position then be that he's not entitled to TASC, or would the State's position be, no, he got the benefit of the bargain, and therefore, despite the fact that he wasn't entitled to it, we will remain silent and not ask for such relief. Well, I believe it would be a void sentence. However, I don't believe the State would be in a position, because that was the bargain that he contracted for if he received TASC. I don't believe the State would be in a position at that point to say, as an ancillary matter on the appeal of another matter, that that should be withdrawn. Going a little further on Judge McLaren, Justice McLaren's question about mutuality, was there a meeting of the minds of all of the parties here that day when the defendant pled guilty? It appears that there was a meeting of the minds. The State obviously was not offering or agreeing to a sentence of TASC or probation. The State recommended a sentence of 10 years incarceration. The defendant got six and a half. But there does seem to be a meeting of the minds, at least to the extent that the State did not object to the letter indicating that the defendant was TASC eligible at the time, and hence the admonishment by the court. As we all know, in practice, the court just doesn't always admonish of TASC. Something jogged the court into admonishing the State. The court actually said, you appear to be or you're apparently eligible for TASC. I believe it was based upon a submission by defense counsel. What do you think the odds were that he was going to get TASC under the circumstances? He did have 12 prior retell convictions. Ten prior felony convictions. Had two convictions for aggravated battery, which would preclude him had the statute been followed from qualifying for TASC. However, TASC apparently did not hold that against him, the actual program. So you don't know what the odds were that he might have gotten TASC? That he might have gotten TASC or probation? TASC. What do you think the odds were that the trial court judge would have granted TASC? Based on his criminal record, which is what the court relied upon, they were not very good. Fifty-fifty going in? One in ten? The court considered it. Of course, at the time of this plea, when he may or may not have entered into this misapprehension, the court did not know his criminal record. The court merely admonished him that apparently you were eligible for TASC. It was only upon learning that he was a career criminal with 12 convictions for retail theft that the court said it would pose a risk to the public, I believe, and deprecated seriousness of the offense to sentence you to either TASC or probation. The admonishment that he possibly could receive probation was not incorrect. However, he did not receive it. The court based its ruling upon his criminal history, not upon the fact that he was precluded from TASC statutorily. And that makes this case exactly like Rhodes, where the prejudice is difficult to imagine even had he gone to trial short of acquittal. But if he had been convicted at trial, he faced two counts. At least in this case, he was able to negotiate the dismissal of one count of retail theft. But if he had gone to trial, he would have faced two counts, possibly two convictions for retail theft and an extended term sentence. There's no showing that the sentencing paradigm would have been better or more advantageous for him to go to trial. And there's simply no right to negotiate for any type of plea. What does the term knowing mean to you in the context of a knowing and voluntary plea? Well, I believe Boykin does say that there has to be an understanding of the minimum or at least an admonishment of the minimum and maximum sentences. So in that context, you would have to be aware of knowing plea being one that you thought you were eligible for something when in fact under the law you were not. Is that a knowing plea or is that an unknown plea? Or is that a knowing stupid plea or a knowing negligent or unintelligent or unreasonable or unrational plea? I would say it's an unreasonable, if there's any misapprehension at all based on this defendant's history, I would submit that if anyone at the time of plea knew whether he was eligible for or with the likelihood of receiving task or probation, he wasn't task eligible, but just the likelihood even, this defendant knew best. So you're telling me that he knew more than the judge? He knew what his criminal history was. Pardon? He knew what his criminal history was. No one else. I'm saying likelihood. I'm not saying what the statute is. Well, I think it's a stretch to say he knew what his criminal history was to also suggest that unless somebody on the record said, by the way, if you've got two or three or six, you're ineligible, but I don't think anybody said that, did they? No. But I'm simply saying that since he knew he had been convicted of ten prior felonies, the likelihood of him receiving a sentence of probation, he should have known, was very low. In fact, he hadn't received a sentence of probation on those latter convictions. The task probation had occurred in 2002. What's the point of admonishments? What's the point of the term knowing? Why don't we just go along with, did he make the plea? And did the procedure seem to appear to follow what the logic of his plea might be in the abstract, regardless of side issues, like whether it's statutorily authorized or not? I mean, that seems to be what your argument is. He wasn't prejudiced because he got the benefit of the bargain, even though the benefit of the bargain was never possible. Actually, again, it wasn't statutorily possible. As I said, had task been granted in error? It could have been granted. It could have been granted in error, and he could have served task probation. It can happen. And what would be the, who would be raising that argument? I mean, your point whether or not it would come in on a separate appeal, some other issue, is very unmarked. This defendant received... I recall a case, it's Rule 23, it's called People Be Large where that happened, except it wasn't just task. It was the entry of a, what was considered to be a lesser-included offense. And normally, the State isn't allowed to invoke a law relative, or I should say, attempt to impose lesser-includes on defendants. But I believe that if there is, in fact, an appeal, the State can cross-appeal and claim that the sentence that was imposed was unauthorized, and therefore can attack it. And my point is, if that's the case, then are, is the State in the future going to, based upon mutuality and based upon the benefit of the bargain, because if you come back and you say on a cross-appeal that he's not entitled to this, would you also say that he shouldn't be allowed to vacate his plea because he got the benefit of the bargain anyway? Those are inconsistent. As I said, I think the State would be in a poor position, based on the mutuality argument, to come in and say that he should be deprived of... But how would the State be in a position to even argue that point if it's a void, unauthorized law? How would they be able to argue it? Yes, on the basis of an estoppel. Well... And if what you're saying, that wouldn't that estoppel apply in virtually every plea bargain, where supposedly it was statutorily unauthorized, but supposedly the State agreed to the parameters of the sentence? Do you understand what a Pandora's box you're opening up by saying what you're saying? I guess my Pandora's box is a little more limited. Maybe it's only this big. It's not that open. I would ask the Court to affirm the Court's denial of the motion to withdraw the guilty plea. There's been no showing that the Court here abused its discretion. The defendant was, even assuming that the misapprehension that he had was reasonable, there's been no showing that he was prejudiced by the Court's consideration of task and probation, neither of which he received. Thank you. Thank you. Dwight? Counsel is correct that Davis says that all pleas need not be withdrawn. There must be a showing of prejudice. But I think the point here is the prejudice here is that he did not receive the benefit of proper admonishments. We don't know what the odds would be that he would get tasked, or wouldn't get tasked. We know the odds are 100% that he couldn't have gotten tasked, and the defendant didn't know those odds. We also know the odds are pretty good that he probably would not have gotten probation, correct? Well, it could be. I mean, I suppose if you play the odds, but the problem with playing the odds here is it's sort of a rigged game because the defendant doesn't know that, in fact, he can't actually win. I suppose Justice McLaren's earlier analogy is the defendant was never in a position to know. Despite his perhaps colorful past, there's no reason to think that he had more knowledge of his criminal history, particularly the effect of that criminal history on whether or not he gets tasked than did the court, than did his counsel, than did the state's attorney for that matter. Well, at the time he pled guilty, who knew better than him what his prior criminal history was? Well, he probably knew his prior criminal history, but he wouldn't necessarily know that his two crimes of violence would prohibit him from task. I mean, he would know what his history was, but that still doesn't necessarily mean that that history wouldn't necessarily preclude him. The conviction subsequent to 2002, up until the time he pled, what was his sentence on those convictions? Actually, that I don't recall offhand, but I know he did make the argument at defense at his sentencing hearing that this was different in the fact that he had not had the same drug problem that he had had before since the prior offense. Well, he went to prison in the prior offense. Right, and he didn't have that drug problem. He was older now. Some of the things that actually... He's only stealing watches now. Well, some of the things that may sound somewhat questionable, but it is a fact, too, that Just did find him to be, or Task found him to be acceptable, and Just thought that given these new circumstances, that he would probably do well in a residential situation, a residential treatment situation. So the problem here, I think, is not that he didn't receive the benefit of the bargain that everyone had a meeting of the minds when they granted him this. The problem was he never had the benefit of the proper admonishments, and it's really a substantial compliance problem with 402, which this Court didn't do, and which I think Ellis compels within this district anyway, and I think consistent with Davis, that substantial compliance does not exist when the minimum and maximum sentences are not given to the defendant. For that reason, we would ask that you reverse the Court's order denying his motion to withdraw his appeal. Thank you. Thank you. Court's adjourned.